IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**HANCOCK FABRICS, INC.,**

    **Plaintiff,**

    v.                                                                         CIVIL ACTION NO. 2:06cv466

**RUTHVEN ASSOCIATES, L.P., and**
**SAMUEL I. WHITE, P.C., Substitute Trustee,**

    **Defendants.**

*MEMORANDUM OPINION & ORDER*

This matter is before the Court on Hancock Fabric, Inc.'s ("Plaintiff's") Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction with a memorandum in support of the motion. Ruthven Associates, L.P. ("Defendant") filed a memorandum in opposition. On August 18, 2006, the Court conducted a hearing on Plaintiff's motion. All named parties were represented at the hearing and were heard on the issues. Therefore, the Court considered Plaintiff's motion as a motion for a preliminary injunction, as opposed to a TRO. At the hearing, the Court **GRANTED** Plaintiff's motion for a preliminary injunction. This opinion explicates and supercedes the Court's ruling during the August 18, 2006, hearing.

Dockets.Justia.com

## I.  FACTUAL AND PROCEDURAL HISTORY

In 1984, SC Diamond Associates ("SC Diamond") sought to purchase and develop property ("the Property") located on Virginia Beach Boulevard in Virginia Beach, Virginia. SC Diamond financed the acquisition and construction of the Property by borrowing $3.5 million through industrial revenue bonds issued by the City of Virginia Beach Development Authority ("the Development Authority"). SC Diamond executed a promissory note and deed of trust on the Property in connection with this refinancing. The deed of trust was recorded in the Clerk's Office of the Circuit Court of the City of Virginia Beach, Virginia on December 21, 1984.

On November 2, 1988, Minnesota Fabrics, Inc., Plaintiff's predecessor through merger, leased a portion of the Property from SC Diamond. A memorandum of lease was recorded on January 3, 1989.

In April, 1995, SC Diamond refinanced the Property. The Development Authority issued new bonds and paid off the holders of the 1984 bonds. In connection with this refinancing, SC Diamond executed and delivered both a promissory note in the amount of $3,110,000 and a new deed of trust. The new deed of trust was recorded on April 27, 1995, and states that it "amends, restates, and supercedes" the 1984 deed of trust.

Despite attempts to compromise, Plaintiff and Defendant were unable to come to a resolution. On July 31, 2006, Defendant Samuel I. White, Substitute Trustee,[1] sent a notice of foreclosure to Plaintiff stating that foreclosure would occur on August 21, 2006. The foreclosure

---

[1] The Court will refer to Defendant Ruthven and Defendant Samuel I. White collectively as "Defendants."

notice states that foreclosure is under the 1984 deed of trust as amended by the 1995 deed of trust. Plaintiff filed a complaint and motion for a temporary restraining order and preliminary injunction on August 15, 2006. Plaintiff's complaint seeks both a declaratory judgment that the 1984 deed of trust has been extinguished and a permanent injunction to prevent foreclosure under it. In the alternative, Plaintiff seeks monetary damages. Defendant Ruthven filed a memorandum in opposition to Plaintiff's motion on August 18, 2006.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 allows district courts the discretion to grant preliminary relief prior to the adjudication of the underlying dispute. *Quince Orchard Valley Citizens Assoc., Inc. v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989). In *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 193-95 (4th Cir. 1977), the Fourth Circuit established the standard for preliminary relief. The *Blackwelder* hardship balancing test requires that the court consider: (1) the likelihood of irreparable harm to the movant if the preliminary injunction is denied; (2) the likelihood of harm to the nonmovant if the requested relief is granted; (3) the likelihood that the movant will succeed on the merits; and (4) the public interest. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271 (4th Cir. 2002) (citing *Direx Israel, Ltd v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)). Under the four-part inquiry, "the first two factors regarding the likelihood of irreparable harm to the plaintiff if [the preliminary injunction is] denied, and of the harm to the defendant if [the injunction is] granted are the most important." *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997). The plaintiff bears the burden of establishing that each of these factors supports granting

the injunction. *Id.*; *Technical Publ'g Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1139 (7th Cir. 1984); *Shaffer v. Globe Prot., Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983).

### III.   DISCUSSION

**1.  Likelihood of Irreparable Harm to Plaintiff Without the Preliminary Injunction**

Generally, "irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (quoting *Danielson v. Local 275*, 479 F.2d 1033, 1037 (2d Cir. 1973)). The Fourth Circuit has noted that, "Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994). However, "[W]hen the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." *Multi-Channel*, 22 F.3d at 552. (citing *Merrill Lynch, Pierce, Fenner & Smith v. Bradley*, 756 F.2d 1048, 1055 (4th Cir. 1985)). The Fourth Circuit has also noted that, "[E]ven where a harm could be remedied by money damages at judgment, irreparable harm may still exist where the moving party's business cannot survive absent a preliminary injunction." *Hughes*, 17 F.3d at 694.

In this case, Plaintiff alleges that without an injunction, Plaintiff will be irreparably damaged by the pending foreclosure sale which could result in termination of its lease. Plaintiff argues that its store on the Property is one of its most profitable stores, and losing it would entail

4

the loss of regular customers, goodwill, and employees as well as lost business opportunities resulting from the need to vacate and relocate.

Defendant Ruthven argues that Plaintiff has no standing to seek an injunction, in that any threatened harm is too speculative to constitute an injury in fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Defendant Ruthven states that it has taken no position on the priority of Plaintiff's lease so that there is no case or controversy, and that Plaintiff cannot necessarily show that it will be forced to give up its tenancy after a foreclosure sale.

Defendant Ruthven also alleges that if Plaintiff is correct and the 1984 deed of trust is invalid, the foreclosure sale would in turn be invalid and Plaintiff's lease would not be affected. Therefore, Defendant Ruthven contends that allowing the foreclosure sale to proceed, even if under an invalid deed of trust, would not harm Plaintiff.

This first *Blackwelder* factor turns on the consequences for Plaintiff if the foreclosure sale proceeds and Plaintiff is correct in its contention that the 1984 deed of trust is no longer valid. Although a foreclosure sale can be declared invalid when the underlying debt is later found to have been already paid, *see Smith v. Woodward*, 122 Va. 356, 365-68, 94 S.E. 916, 919-21 (Va. 1918), Plaintiff would still be harmed if the foreclosure purchaser cancels their lease and attempts to force them to vacate. Plaintiff would then be forced to litigate the validity of the sale with a third party purchaser, possibly a bona fide purchaser. Plaintiff has operated its store on the Property continuously since 1988. The goodwill, customers, employees, and business opportunities that Plaintiff alleges it will lose unless it is granted an immediate injunction against the August 21, 2006 foreclosure sale would constitute irreparable harm to Plaintiff. *See Multi-Channel*, 22 F.3d at 552 (discussing the "possibility of permanent loss of customers to a competitor or the loss of

goodwill" as constituting an irreparable injury). Plaintiff has therefore alleged sufficient irreparable injury to support the first *Blackwelder* factor.

In addition, although Plaintiff cannot necessarily show that a purchaser at the foreclosure sale would decide to cancel Plaintiff's lease, Plaintiff can still show that foreclosure would, "be traceable to an action by defendants which the court could prevent by the exercise of its remedial powers." *Little Earth of United Tribes, Inc. v. United States Dept. of Housing and Urban Development*, 584 F. Supp. 1287, 1289 (D.C. Minn. 1983). In *Little Earth Tribes*, the District Court held that a residents' council had standing to seek an injunction against a foreclosure sale. *Id.* The Court stated that, "The question is not . . . whether the tenants will be better off if foreclosure occurs; the question is, rather, if the threatened injury occurs, i.e., foreclosure and eviction, will it be traceable to an action by defendants which the court could prevent by the exercise of its remedial powers?" *Id.* The same principle applies in the instant case.

**2. Likelihood of Harm to the Defendants With the Injunction**

Plaintiff alleges that the likelihood of harm to the Defendants is minimal. Plaintiff argues that a preliminary injunction would only mean a delay in the foreclosure sale date in order to first determine the validity of the 1984 deed of trust.

Defendant Ruthven argues that it will suffer harm in the form of scheduling and advertising costs if the sale is delayed. Defendant Ruthven further argues that it is continually losing money as there has been a default and SC Diamond is not paying on its obligation. Defendants argue that if the sale is postponed, the presence of pending litigation will chill the bidding, so that Defendant Ruthven may not recover its obligation in full. Finally, Defendants argue that a delay in the foreclosure sale could allow BB&T to foreclose on a senior deed of trust, and extinguish Defendant

6

Ruthven's interest.

Defendants have not shown that they would incur substantial harm with a delay in the foreclosure sale. As far as the mounting arrearage, the Court notes that Defendant Ruthven has not exercised its right to have Plaintiff pay rent directly to it. Whether a delayed sale would bring a lower price is purely speculative. Defendants' argument that a delay would mean chilled bidding due to pending litigation fails as there is already pending litigation over the Property. Defendants also can only speculate whether BB&T will choose to foreclose. In the event that they do, Plaintiff's required security bond[2] will ameliorate this situation.

After weighing the irreparable harm to Plaintiff with the harm to Defendants, the balance favors Plaintiff. *Blackwelder*, 550 F.2d at 195. Therefore, since the balance weighs in Plaintiff's favor, Plaintiff is only required to raise "'questions to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberative investigation.'" *Blackwelder*, 550 F.2d at 195 (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)).

### 3. Plaintiff's Likelihood of Success on the Merits

This dispute centers around whether the 1984 deed of trust, which the Defendants are foreclosing under, was extinguished by the 1995 refinancing and subsequent deed of trust. Plaintiff's lease was recorded in 1989, and is therefore inferior to the 1984 deed of trust and superior to the 1995 deed of trust. The 1995 deed of trust states that it "amends, restates, and supercedes" the 1984 deed of trust. Resolutions adopted by the Development Authority in connection with the 1995 bond issue state that the 1995 bonds were issued to refund the 1984

---

[2] *See* Fed. R. Civ. Pro. 65(c).

bonds. Plaintiff alleges that since the 1984 debt was fully satisfied, the 1984 deed of trust was extinguished so that Defendants cannot foreclose under it.

Defendant Ruthven argues that the scheduled foreclosure is valid. Defendant Ruthven asserts that the 1995 debt was merely given to replace the original evidence of the 1984 debt, and does not constitute a novation. *See Farmers v. Mutual Assurance Soc'y*, 31 Va. 69, 88, 4 Leigh 69, 89 (1832) ("Equity looks to the substance, not to the forms, of things. Equity sees that when a dealer at bank pays off a note by renewal, the debt is the same; the debt remains unpaid, and the credit only is extended.").

The Court finds, however, that Plaintiff has alleged facts which provide at least a "'question[] to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberative investigation.'" *Blackwelder*, 550 F.2d at 195 (quoting *Hamilton Watch Co.*, 206 F.2d at 740). Plaintiff has therefore made a sufficient showing of a likelihood of success on the merits.

### 4. The Public Interest

The "public interest" aspect of the *Blackwelder* test encompasses the need to maintain the status quo. *Richmond Medical Center for Women v. Gilmore*, 11 F. Supp. 2d 795, 828 (E.D. Va. 1998). In the present case, this need favors the Plaintiff. The Defendants will suffer little harm under a preliminary injunction that at most delays their foreclosure action. Plaintiff, however, could suffer much more severe harm in the event the foreclosure under the 1984 deed of trust proceeds and their lease is cancelled, and it is only later determined that the 1984 deed was in fact previously extinguished. In other words, maintaining the status quo until the 1984 deed of trust's continuing validity is determined will only inflict minimal harm to Defendants while potentially

avoiding much more severe harm to Plaintiffs.  Defendant Ruthven could have chosen to avoid this situation by foreclosing under the 1995 deed of trust.

### IV.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Preliminary Injunction is **GRANTED.**  Plaintiff shall post a bond in the amount of $300,000.00.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**


                                    _____/s/_____
                                    Raymond A. Jackson
                                    UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 22, 2006