**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**


**HANCOCK FABRICS, INC.,**

     **Plaintiff,**

     **v.**                                     **CIVIL ACTION NO. 2:06cv466**


**RUTHVEN ASSOCIATES, L.P., and**
**SAMUEL I. WHITE, P.C., Substitute Trustee,**

     **Defendants.**


***MEMORANDUM OPINION & ORDER***

     This matter is before the Court on motions for summary judgment filed by Hancock

Fabrics, Inc. ("Hancock") and Ruthven Associates, L.P. ("Ruthven"), and Hancock's motion for

leave to file an amended complaint and for voluntary dismissal of Count III of the complaint.  On

February 20, 2007, the Court conducted a hearing on these motions.  Having held a hearing, and

having carefully reviewed the parties' pleadings, the Court finds these matters ripe for judicial

determination.  For the reasons stated below, Hancock's motion for summary judgment on Counts

I and II is **DENIED**.  Ruthven's motion for summary judgment is **GRANTED** as to Counts I and

II.  Hancock's motion to voluntarily dismiss Count III is **GRANTED**.  Hancock's motion to amend

the complaint is **GRANTED**.  This opinion explicates and supercedes the Court's ruling during the

February 20, 2007, hearing.

1

## I.  FACTUAL AND PROCEDURAL HISTORY

In 1984, SC Diamond Associates, L.P. ("SC Diamond") purchased and developed

property ("the Property") located on Virginia Beach Boulevard in Virginia Beach, Virginia.  In

order to finance the acquisition and construction of the Property, the City of Virginia Beach

Development Authority ("the Authority") issued industrial revenue bonds worth $3.5 million.

These tax-exempt bonds were payable only from revenue generated by the Property.  The Authority

loaned the $3.5 million generated by the bond issue to SC Diamond in exchange for a note and a

Deed of Trust on the Property.  The deed of trust was recorded in the Clerk's Office of the Circuit

Court of the City of Virginia Beach, Virginia on December 21, 1984.

On November 2, 1988, Minnesota Fabrics, Inc., Plaintiff's predecessor through merger,

leased a portion of the Property from SC Diamond.  A memorandum of lease was recorded on

January 3, 1989.

In 1995, SC Diamond sought to restructure the financing of the Property.  The Authority

issued new tax-exempt bonds and used the proceeds to pay off the 1984 bondholders.  SC

Diamond issued a new note in the amount of $3,110,000 together with a new deed of trust to the

Authority.  This restructuring resulted in SC Diamond paying a lower interest rate on its debt.  The

new deed of trust was recorded on April 27, 1995, and states that it "amends, restates, and

supercedes" the 1984 deed of trust.

On or about 2000, Ruthven purchased the 1995 note.  Ruthven remains the holder of the

1995 note.  On March 31, 2006, counsel for SC Diamond contacted counsel for Ruthven and

indicated that SC Diamond would not make any further payments on the 1995 note.  On July 31,

2006, Samuel I. White, P.C., ("Samuel White") the substitute trustee of the Property, sent a notice

of foreclosure to Hancock stating that on August 21, 2006 it would foreclose on the Property under the 1984 deed of trust as amended by the 1995 deed of trust.

On August 15, 2006, Hancock filed a complaint against Ruthven and Samuel White.  Count I of the complaint seeks a declaratory judgment that the 1984 deed of trust has been extinguished and that Hancock's lease is superior in priority to the 1995 deed of trust.  Count II of the complaint asks for a permanent injunction to enforce a judgment that Hancock's leasehold interest is superior to the instrument Samuel White could use to foreclose on the Property.  Count III of the complaint alleges tortious interference with contract against Samuel White and Ruthven.

On August 18, 2006, the Court granted Hancock's motion for a preliminary injunction to prevent foreclosure.  On September 6, 2006, Samuel White and Ruthven filed answers to the complaint.  On January 3, 2007, Hancock filed a motion for summary judgment on Counts I and II of the complaint.  On January 16, 2007, Ruthven filed a motion for summary judgment and a response in opposition to Hancock's motion for summary judgment.  On January 17, 2007, Hancock filed a motion to dismiss Count III of the complaint and add a count for equitable subordination.  On January 29, 2007, Hancock filed a reply in support of its motion for summary judgment and an opposition to Ruthven's motion for summary judgment.  On February 2, 2007, Ruthven filed an opposition to Hancock's motion to amend the complaint and dismiss Count III. On February 7, 2007, Hancock filed a reply in support of its motion to amend the complaint and dismiss Count III.  On February 8, 2007, Ruthven filed a reply in support of its motion for summary judgment.

## II.  LEGAL STANDARDS

**A.  Summary Judgment**

Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Haulbrook v. Michelin North Amer., Inc.*, 252 F.3d 696, 700 (4th Cir. 2001) (citing *McKinney v. Bd of Trustees of Mayland Cmty. Coll.*, 955 F.3d 924, 928 (4th Cir. 1992) (stating that "summary judgment should be granted only when it is perfectly clear that no issue of material fact exists, and it is not necessary to inquire further into the facts in order to clarify the operation of the law")).  In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).  To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.

**B.  Motion to Amend Complaint and Voluntary Dismissal**

Federal Rule of Civil Procedure 15(a) provides that where responsive pleadings have been filed, a party may amend his pleading only by leave of court or by written consent of the adverse party.  Fed. R. Civ. P. 15(a).  Rule 15(a) further provides that "leave shall be freely given when justice so requires."  *Id.*  Discretion to deny leave to amend is limited to such instances as undue

4

delay, dilatory motive on the part of the moving party, futility of amendment, and undue prejudice to the nonmoving party. *Smith v. Angelone*, 111 F.3d 1126, 1134 (4th Cir. 1997); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Connelly v. General Med. Corp.*, 880 F. Supp. 1100, 1109 (E.D. Va. 1995). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. In the absence of prejudice, the granting of leave to amend is normally warranted. *Id.*

Federal Rule of Civil Procedure 41(a)(2) provides that a plaintiff is allowed to voluntarily dismiss an action upon an order of the court. Fed. R. Civ. P. 41(a)(2). "The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). "In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant." *Id.* An order allowing dismissal under Rule 41(a)(2) is subject to "such terms and conditions as the court deems proper." Fed. R. Civ. P. 41(a)(2).

## III.   DISCUSSION

### A.  Summary Judgment

Hancock argues that the 1995 bond issue and the refunding of the 1984 bonds extinguished the 1984 debt, so that the 1984 deed of trust was also extinguished. Hancock's lease was recorded before the 1995 deed of trust; consequently, Hancock argues that its lease has priority over the deed of trust that Ruthven can use to foreclose. Ruthven responds that Hancock has misconstrued the nature of the bond issue and the 1995 transactions, and that the parties to these transactions

5

never intended to extinguish the 1984 deed of trust's priority.

In Virginia, "A mortgage secures a debt, and not the note or bond, or other evidence of it. No change in the form of the evidence, or the mode or time of payment-nothing short of actual payment of the debt, or an express release-will operate to discharge the mortgage." 2 Jones on Mortgages § 924, *quoted in C.B. Van Nostrand & Co., Inc. v. Va. Zinc & Chem. Corp.*, 126 Va. 131, 138, 101 S.E. 65, 67 (1919); *see also Artrip v. Rasnake*, 96 Va. 277, 284, 31 S.E. 4, 6 (1898) ("A mortgage or deed of trust remains a lien until the debt it was given to secure is satisfied, and is not affected by a change of the note, or by giving a different instrument as evidence of the debt."). In *Waynesboro Nat'l Bank v. Smith*, 151 Va. 481, 490, 145 S.E. 302, 305 (1928), the Supreme Court of Virginia stated, "Courts are ever reluctant to treat the execution and delivery of a new note in the stead and place of a note secured by a lien as a satisfaction of the debt." In addition, "[T]he presumption is that the debt has not been extinguished, and the burden is upon him who relies upon a novation to show that the lien has been intentionally displaced." *Id.* Hancock argues that the 1995 bond issue constituted new debt that extinguished the 1984 debt and deed of trust.

The Supreme Court of Virginia's decision in *Sackadorf v. JLM Group Ltd. P'ship*, 250 Va. 321, 462 S.E.2d 64 (1995) is instructive on the issue of refinancing debt and the priority of preexisting liens. In *Sackadorf*, the debtor, JLM Group Limited Partnership ("JLM Group"), owned two parcels of land. *Id.* at 324, 462 S.E.2d at 66. The parcels were subject to a first lien by Dominion Federal Savings and Loan Association ("Dominion") as well as two junior liens. *Id.* at 325, 462 S.E.2d at 66. Less than one year after obtaining financing through Dominion, JLM Group applied to American Security Bank, N.A. ("ASB") to refinance the Dominion loan at a lower interest rate. *Id.* at 326, 462 S.E.2d at 67. The refinancing was accomplished through a transfer of

6

funds from ASB to an escrow account, and then from there to the settlement agent for the

Dominion loan.  *Id.*  JLM Group eventually defaulted on the ASB loan, and the holders of the

junior liens argued that the refinancing from Dominion to ASB resulted in an extinguishment of

debt and loss of priority.  *Id.* at 327-28, 462 S.E.2d at 67-68.

The Supreme Court of Virginia stated that, "The legal effect of the 1986 transaction

depends on a determination whether JLM Group, the sole obligor under the Dominion notes, was

payor of the funds received by Dominion."  *Id.* at 330, 462 S.E.2d at 69.  The Supreme Court of

Virginia stated that:

> [I]f the person or entity supplying the funds is not a party to the
> instrument alleged to have been paid, and is not obligated in any way
> for its payment, then the question whether the transaction "is a payment
> or a purchase is a question of intention-of fact rather than of law-and is
> to be settled by the evidence."

*Id.* (quoting *Cussen v. Brandt*, 97 Va. 1, 7, 32 S.E. 791, 793 (1899)).  The Supreme Court of

Virginia held that because the evidence showed that JLM Group did not have control over the

funds used to pay the Dominion loan and that the parties intended an assignment of debt rather

than payment of the underlying debt, Dominion's senior lien was not extinguished and ASB had

acquired a first lien.  *Id.* at 331, 462 S.E.2d at 70.

In the instant case, the facts show that SC Diamond did not have control over the funds

used to pay the 1984 bondholders.  First, SC Diamond's debt was to the Authority, not the

bondholders.[1]  In 1984, the Authority loaned money to SC Diamond that came from the

Authority's own issuance of industrial revenue bonds.  SC Diamond issued a note to the Authority

---

[1] For a more detailed description of how industrial revenue bonds are structured, *see
generally Steele v. Indus. Dev. Bd.*, 301 F.3d 401, 413-415 (6th Cir. 2002).

and an associated deed of trust as security.  In 1995, SC Diamond sought to rearrange this financing in order to take advantage of a lower interest rate.  In order to accomplish this, the Authority needed to retire the 1984 bonds and issue new bonds that reflected a different interest rate.  The funds used to pay the 1984 bondholders came from the Authority, through the new 1995 bondholders.  SC Diamond issued the Authority a new note and deed of trust to reflect the new financing arrangement, but SC Diamond, the obligor, was not the source of the funds used to pay the 1984 debt.  SC Diamond may have initiated the 1995 transaction, and the 1984 bondholders were in fact paid off, but the underlying debt owed by SC Diamond and secured by the 1984 deed of trust was not paid by SC Diamond.

Hancock argues that *Sackadorf* can be distinguished because it dealt with a purchase and assignment of a note and deed of trust, whereas the instant case involves the paying off of an original debt.  However, *Sackadorf* is on point in that it generally discusses the consequences of the paying off of the original source of a debt and substituting a new debt in its place.  In that manner, *Sackadorf* is directly relevant to the instant case.

Hancock also argues that the conduit nature of the bond financing, whereby the Authority was not generally obligated on the bonds which were to be paid solely from the Property's revenue, meant that SC Diamond's debt was essentially to the bondholders.  Even if true, the fact remains that SC Diamond did not pay the original 1984 debt.  The nature of this debt was changed in 1995, when SC Diamond substituted a new note for the 1984 note, which substitution was made possible by the Authority's new bond issue.  However, the sole obligor, SC Diamond, did not pay the debt.  Therefore, whether the underlying debt is extinguished depends on the parties' intent and is a question of fact.  *See id.* at 330, 462 S.E.2d at 69.

8

The parties' intent can be determined by examining the relevant documents.  The 1984 deed of trust states that its purpose is "to secure the payment of the principal of, premium, if any, and interest on, the [1984] Note, all other payments required thereunder, and the due and punctual payment and performance of all of [SC Diamond's] other obligations . . . ."  (Hancock Mot. for Summ. J. Ex. 3, at 2.)  The 1984 deed of trust secures the 1984 note.  The 1995 deed of trust states that it is an "amended and restated" deed of trust.  (Hancock Mot. for Summ. J. Ex. 7, at 1.)  It also states that:

> Whereas, the [Authority] has agreed to issue its $3,110,000 Industrial Development Revenue Refunding Bonds . . . to refinance the 1984 Bonds and 1984 Note; and
> Whereas, . . . [SC Diamond] has executed and delivered to the [Authority] in substitution for the 1984 Note, its promissory note . . . .

(*Id.*)  The term "amended and restated" combined with the 1995 deed of trust's reference to the 1995 note as being "in substitution for" the 1984 note shows that the parties did not intend for the 1984 deed of trust to be extinguished or for the 1984 debt to be satisfied.

In addition to the transactional documents themselves, Ruthven has provided the declaration of Robert O. Copeland ("Copeland"), a general partner of SC Diamond.  Copeland affirms that the 1984 note was never paid and that the 1995 note was substituted for the 1984 note to secure the 1984 deed of trust as amended and restated in 1995.  (Decl. of Robert O. Copeland, at ¶ 13.)  Ruthven has also provided a copy of the 1984 title insurance policy for the Property as well as the 1995 endorsement.[2]  The 1995 title insurance policy endorsement amending the 1984 policy

---

[2] Hancock objects to these documents as being hearsay and inadmissible legal opinion. However, the title insurance documents are not used here for "the truth of the matter asserted;" rather, they are non-hearsay because they are relevant to the intent of the parties to the 1995 transaction.  *See* Fed. R. Evid. 801(c).  They are being used to show the parties' intent, and not for their legal conclusions.  These documents cannot show that Hancock's lease is subordinate to

noted Hancock's lease interest as subordinate to Ruthven's lien.  (Ruthven Mot. for Summ. J. Exs.

D, G.)  This is further evidence that at the time of the 1995 transactions the parties did not intend

for the underlying debt and lien to be extinguished.  Finally, at the same time as the 1995

transaction, SC Diamond and the Authority filed a substitute trustee's deed for the 1984 deed of

trust, changing the trustee.  (Decl. of Robert O. Copeland Ex. F.)  There would have been no

purpose for the substitution if the parties had intended the 1995 transaction to extinguish the 1984

deed of trust.

Hancock argues that certain terms in the 1995 transaction documents illustrate that the

parties meant for the underlying 1984 debt to be considered paid, thereby extinguishing the 1984

lien priority.  Specifically, Hancock points to the terms "supercedes" and "refinance" in the 1995

deed of trust.  In full, the 1995 deed of trust says that it "amends, restates and supercedes" the 1984

deed of trust.  (Hancock Mot. for Summ. J. Ex. 7, at 2.)  The 1995 deed of trust also mentions the

1984 deed of trust and its December 21, 1984 recording date.  (*Id.* at 1.)  Taken in context, the term

"supercedes" in the 1995 deed of trust does not mean that the 1984 lien was extinguished, it only

means that the 1995 deed of trust amended the terms of the 1984 deed of trust.  The term

"refinance," by itself, also does not mean that the 1995 transaction extinguished the 1984 lien.  The

transaction in *Sackadorf* that the Supreme Court of Virginia held did not extinguish a senior lien

was also characterized as a "refinancing."  *See Sackadorf*, 250 Va. at 326, 462 S.E.2d at 67.  The

terms "supercedes" and "refinance," when taken in context, do not establish that the effect of the

1995 transaction was to extinguish the 1984 lien.

---

Ruthven's interest, but they can show that the parties to the 1995 transaction *intended* that
Hancock's lease would remain subordinate.

10

Hancock also points to language from the 1995 Limited Offering Memorandum, Summary of Significant Forecast Assumptions and Accounting Policies, and Refunding Agreement and Indenture of Trust that states that the 1995 bond offering was for the purpose of refunding the 1984 bonds and retiring SC Diamond's 1984 debt.  The language concerning the Authority's issuance of the 1995 bonds for the purpose of refunding the 1984 bonds is not at all inconsistent with the 1984 lien's survival because, as explained above, the debt at issue is from SC Diamond to the Authority, not the bondholders.  SC Diamond's Summary of Significant Forecast Assumptions and Accounting Policies does state that the 1995 loan from the Authority was to "retire the Company's existing debt under Series 1984 Industrial Development Revenue Bonds previously issued by the Authority . . . .  (Hancock Mot. for Summ. J. Ex. 8, at B4.)  This language would seem to indicate that SC Diamond did intend for the 1995 refinancing to extinguish its earlier debt.  However, taken alone, this is not enough to rebut the presumption in Virginia law that execution of a new note does not displace an existing lien.  *See Waynesboro Nat'l Bank*, 151 Va. at 490, 145 S.E. at 305.

The consequence of Hancock's argument is that it would be difficult for an industrial revenue bond-financed project to restructure the terms of its financing without risking losing lien priority.  Under Virginia law, senior creditors are free to change the terms of their financing without the consent of junior interest holders as long as the change does not materially "prejudice the rights or impair the security" of the junior interest holders.  *Sackadorf*, 250 Va. at 332, 462 S.E.2d at 70.  In an industrial revenue bond project, such a refinancing could, as in the instant case, mean that the original revenue bonds must be refunded with proceeds from a new bond issue.  However, as long as the junior interest holders are not materially prejudiced, such a transaction should not lead to the extinguishment of the senior lien.

In the instant case, Hancock was not prejudiced by the terms of the 1995 transaction.  The 1995 note has the same maturity date as the 1984 note, is for a lower face value, and has a more favorable interest rate structure.  (Hancock Mot. for Summ. J. Exs. 2, 6.)  Hancock does not attempt to argue that the terms of the 1995 transaction prejudiced it.  *See Sackadorf*, 250 Va. at 334-35, 462 S.E.2d at 71-72 (stating that although some provisions of a modified loan agreement may be adverse to a junior lienor, the trial court properly considered all the circumstances and concluded that the changes did not prejudice the junior lienors).  As a lessee, Hancock benefitted from the more favorable interest rate structure in that it increased SC Diamond's ability to make payments on its financing, thus helping prevent foreclosure.  It is difficult to see how the 1995 transaction increased Hancock's risk as a lessee of the Property.

Hancock makes an argument that under Virginia's recording statute, the priority of the 1995 deed of trust can only run from its recording date, even if the Court finds that the 1984 deed of trust survived the 1995 transaction.  Virginia's statute provides that deeds of trust have priority over purchasers for interest and lien creditors whose interest arise after recording.  Va. Code Ann. § 55-96(A) (2003).  Hancock argues that this means that even if the 1984 deed of trust survives, the 1995 modification resets the priority date.  However, the first deed of trust in the instant case was recorded in 1984, before Hancock's leasehold interest.  Hancock's argument ignores the clear Virginia case law that states that a senior lienor may modify a senior deed of trust without losing priority so long as the junior interests are not prejudiced.  *See Sackadorf*, 250 Va. at 332, 462 S.E.2d at 70.

Hancock also argues that because the 1995 deed of trust is a credit line deed of trust, Virginia's credit line deed of trust statute mandates that the 1995 deed only receives priority from

12

the date it was recorded.  Virginia's credit line deed of trust statute states that

> A credit line deed of trust, . . . shall have validity and priority over any (i) contract in writing, deed, conveyance or other instrument conveying any such estate or term subsequently recorded or (ii) judgment subsequently docketed as to all advances made under such credit line deed of trust from the date of recordation of such credit line deed of trust, regardless of whether or not the particular advance or extension of credit has been made or unconditionally committed at the time of delivery or recordation of such contract in writing, deed or other instrument or the docketing of such judgment.

Va. Code Ann. § 55-96(B) (2003).  Unlike a standard deed of trust, a credit line deed of trust may secure "advances to be made in the future by the noteholder named in the credit line deed of trust." Va. Code Ann. § 55-58.2(1) (2003).  Hancock argues that because the 1995 deed of trust permitted SC Diamond to receive future advances and incur new debt, and because Hancock did not have prior notice of this change, the 1995 change was so substantial that priority should only be afforded over interests subsequent to the 1995 deed of trust's recording.  However, the 1995 credit line deed of trust does contain a provision limiting the amount of future advances that can be secured to the amount originally secured.  (Hancock Mot. for Summ. J. Ex. 7, at 3.)  Unlike a junior lienor, Hancock has little reason to be concerned with SC Diamond's equity in the Property.  Hancock's chief concern is to avoid foreclosure by any interest superior to its lease.  Hancock may prefer that the senior lien be paid down over time, but Hancock may also benefit from its landlord having better access to future funding.  In short, from Hancock's position as a lessee, the 1995 transaction did not materially prejudice Hancock.  Therefore, as to Hancock, the 1995 deed of trust properly modified the 1984 deed of trust without losing priority.  *See Sackadorf*, 250 Va. at 332, 462 S.E.2d at 70.  Hancock's motion for summary judgment on Counts I and II is DENIED, and Ruthven's motion for summary judgment is GRANTED as to Counts I and II.

13

**B.  Motion to Amend Complaint and Voluntary Dismissal**

Hancock has moved to dismiss Count III of its complaint under Federal Rule of Civil

Procedure 41(a)(2) and then amend the complaint under Federal Rule of Civil Procedure 15(a) by

adding a claim for equitable subordination.  The current Count III asserts a claim against Ruthven

and Samuel White for tortious interference with contract.  Ruthven does not oppose Hancock's

motion to dismiss Count III.  The motion to dismiss was filed after Ruthven moved for summary

judgment, but the Court notes that Ruthven's motion for summary judgment does not challenge

Count III.  The Court finds that neither Ruthven nor Samuel White will be unfairly prejudiced by

the dismissal of Count III.  *See Davis*, 819 F.2d at 1273.  Therefore, Hancock's motion to dismiss

Count III is GRANTED.

Hancock asserts that it should be allowed to amend the complaint by adding a claim for

equitable subordination against Ruthven, arguing that it has developed facts in discovery which

support the new claim.  Ruthven argues that the motion to amend is untimely.  Ruthven also argues

that Hancock's proposed claim for equitable subordination does not state a valid claim under

Virginia law.  As responsive pleadings have been filed and Ruthven does not consent, Hancock's

amendment requires leave of the Court.  Fed. R. Civ. P. 15(a).

Hancock's motion to amend was filed on January 17, 2007, which is almost two months

before trial is scheduled.  Although undue delay can be a factor in analyzing a motion to amend,

*see Smith*, 111 F.3d at 1134, delay alone is not a sufficient reason to deny the motion to amend.  *Id.*

The delay must be accompanied by prejudice to the nonmovant.  *Id.*  Ruthven argues that it has

been prejudiced in that it has little time to prepare this claim for trial and that it will not have an

opportunity to conduct relevant discovery.  However, the Court will reschedule the trial in this case

14

and will allow Ruthven to propound interrogatories to Hancock to alleviate any possible prejudice to Ruthven.  Some of the facts upon which Hancock bases its new claim were in fact included in Hancock's original complaint.  As Hancock points out, multiple paragraphs of the original complaint are relevant to the new cause of action.  Ruthven cannot argue that it has not been on notice of the basis of Hancock's equitable subordination claim.  Hancock states that it has acquired new information relevant to these facts through discovery, some information coming as late as December 11, 2006.  Under these circumstances, it would be inappropriate to deny Hancock's motion to amend based upon any delay in filing.

In addition, Hancock's claim for equitable subordination properly states a claim.  It is true that Virginia case law has yet to specifically endorse a claim for equitable subordination. However, the concept of equitable subordination is explicitly recognized under the bankruptcy code as well as at least one other state.  *See* 11 U.S.C. § 510(c) (2000); *Nerox Power Sys., Inc. v. M-B Contracting Co.*, 54 P.3d 791, 794-95 (Alaska 2002).  More importantly, equitable subordination is directly related to the Virginia concept of the constructive trust.  In Virginia, constructive trusts can be imposed in order "to prevent fraud or injustice."  *Leonard v. Counts*, 221 Va. 582, 588, 272 S.E.2d 190, 195 (1980).  The Supreme Court of Virginia has stated that a constructive trust may be defined as follows:

> Constructive trusts arise, independently of the intention of the parties, by construction of law ; being fastened upon the conscience of him who has the legal estate, in order to prevent what otherwise would be a fraud.  They occur not only where property has been acquired by a fraud or improper means, but also where it has been fairly and properly acquired, but it is contrary to the principles of equity that it should be retained, at least for the acquirer's own benefit.

1 Minor on Real Property § 462, at 616 (2d ed. Ribble 1928), *quoted in Leonard*, 221 Va. at 589,

15

272 S.E.2d at 195.  A constructive trust does not have to be based on fraud.  *Leonard*, 221 Va. at 590, 272 S.E.2d at 196.  A constructive trust can apply whenever one party would be unjustly enriched by allowing it to retain title to a property.  *Id.* at 590, 272 S.E.2d at 195-96.  The Supreme Court of Virginia has applied constructive trusts to situations where one party agrees to purchase property for another and instead purchases it for himself, *id.* at 590-91, 272 S.E.2d at 196, where a husband murders his wife and would otherwise be entitled to her half of a tenancy by the entirety, *Sundin v. Klein*, 221 Va. 232, 240, 269 S.E.2d 787, 791 (1980), and where a husband reconveyed marital property to his mother to prevent his wife from claiming it in divorce proceedings, *Richardson v. Richardson*, 242 Va. 242, 245-47, 409 S.E.2d 148, 150-52 (1991).  Constructive trusts may be established by parol evidence, and they must be proven by clear and convincing evidence.  *Sutton v. Sutton*, 194 Va. 179, 185, 72 S.E.2d 275, 278 (1952).

In the instant case, Hancock argues that it has discovered facts which would allow it to argue that SC Diamond agreed with Ruthven to default on the loan.  Hancock argues that the purpose of this agreement was to cause a foreclosure for the specific purpose of prematurely terminating Hancock's lease.  Hancock has pointed to, among other things, the facts that after default Ruthven never requested an assignment of rents from SC Diamond despite rent being paid and the fact that SC Diamond entered into a lease with Wal-Mart for the Property after Ruthven informed Hancock that foreclosure was imminent.  Given Virginia's constructive trust law, Hancock can properly state a claim for equitable subordination.  Under Federal Rule of Civil Procedure 15(a), leave to amend is "to be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  Hancock's motion to amend the complaint is GRANTED.

16

## IV.  CONCLUSION

For the reasons set forth above, Hancock's motion for summary judgment on Counts I and II is **DENIED**.  Ruthven's motion for summary judgment is **GRANTED** as to Counts I and II. Hancock's motion to dismiss Count III is **GRANTED**.  Hancock's motion to amend the complaint is **GRANTED**.

It is **FURTHER ORDERED** that the trial is rescheduled to April 12, 2007.  Ruthven shall propound interrogatories to Hancock regarding Hancock's new cause of action no later than February 23, 2007, and Hancock shall reply to the same no later than March 2, 2007.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**


_____/s/_____
Raymond A. Jackson
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 20, 2007

17